UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22891-MC-KING/TURNOFF

MILLIKEN & COMPANY, a Delaware
corporation,
              Plaintiff,
v.

HAIMA GROUP CORPORATION, and
WEIHAI NO. 1 CARPET FACTORY,

              Defendants.
v.

CARNIVAL CORPORATION, and
PRINCESS CRUISE LINES, LTD.,

              Garnishees
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Third-Party Weihai Haima Dahua Carpet Co.'s (hereinafter "Dahua") Motion for Determination[1] that Chinese Law Applies to the Issue of Whether Dahua is the Alter Ego of Weihai Haima Carpet Co., Ltd., the Alleged Successor in Interest to the Judgment Debtor **[D.E. 89]**. A hearing on this Motion **[D.E. 89]** took place before the undersigned on Friday, January 29, 2010.

Upon review of the Motion **[D.E. 89]**, the Response, the Reply, the court file, the applicable law, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

By way of summary, this action stems from litigation between Milliken & Company (hereinafter "Milliken"), Haima Group Corporation (hereinafter "Haima") and Weihai No.1 Carpet Factory

---

[1] Pursuant to the Order of Reference, this Report and Recommendation shall address only the issue of *whether* Chinese law should apply.

(hereinafter "Weihai") in the District of Nevada. (Case No. CV- JS- 02-1376-JCM- RJJ). In that case, Milliken sued Weihai and Haima alleging, *inter alia*, copyright infringement. Milliken obtained a Permanent Injunction and Final Judgment against Weihai and Haima in the amount of $4,050,000. **[D.E. 1]**. Plaintiff registered said foreign judgment in this district on October 17, 2008, pursuant to Chapter 55 of the Florida statutes. Id. Various Motions for Writs of Garnishment followed. **[D.E. 6, 7]**. Writs of Garnishment were subsequently issued as to Carnival and Princess in December 2008. **[D.E. 32,34]**.

Acting on a Writ of Execution, and in an effort to collect on the judgment, Milliken seized approximately two-hundred (200) rolls of carpet allegedly sold by Dahua to Princess Cruise Lines, Ltd., and/or Carnival Corporation. Upon information and belief, the carpet has since been returned, but funds owed by Carnival to Dahua for payment of same are currently being held pending the outcome of this garnishment proceeding. See Hr'g Tr.(Dec. 9, 2008 )**[D.E. 50 ]**. Dahua's Motion to Dissolve the Writs was denied, as was its Motion for Summary Judgment. **[D.E. 35 & 78]**. The case is currently set to be tried before the Honorable James L. King on August 30, 2010. **[D.E.104]**.

### Corporate Entities

The following is a chart of the corporate defendant entities at issue.

```
┌─────────────────────────────────────────┐
│      Weihei No. 1 Carpet Factory        │
│         (established in 1958)           │
│         Reorganized in 2003 as:         │
└─────────────────────────────────────────┘
┌─────────────────────────────────────────────┐
│        Weihai Haima Carpet Co., Ltd.        │
│     (successor in interest to Weihai No. 1) │
│              owns interest in:              │
└─────────────────────────────────────────────┘
┌───────────────────────────────────────────────┐
│                    Dahua                      │
│ (a Chinese joint venture company formed in 2005) owned by: │
│           Weihai Haima     = 65%              │
│           Taiga Trading Co. = 35%             │
└───────────────────────────────────────────────┘
```

## Instant Motion

In its Motion, Dahua argues that the laws of its state of incorporation, i.e., China, should govern on the issue of whether Dahua is an alter ego of Weihai Haima – the successor in interest to the judgment debtor. Dahua also argues that such a determination relates directly to the internal affairs of the company which are ordinarily determined by the state of incorporation. See e.g., Hood Brothers Partners, L.P. v. USCO Distribution Services, Inc., 140 F.3d 1386, 1388, n.1 (11th Cir. 2008) (the law of the state of incorporation typically governs the legal effect of a corporation's dissolution, including the questions of the corporation's status, rights, and liabilities).

In support of this argument, Dahua submits the affidavit of Jamie Zhang, Dahua's General Manager. See Zhang Aff. ¶ 1 **[D.E. 54-1]**. According to Zhang, Dahua did not come into existence until 2005 – over two years after the entry of the judgment at issue. Id. at ¶ 2. Zhang further states that Dahua is a foreign investment joint venture whose shareholders are Weihai Haima Carpet Co. Ltd. (65%) and Taiga Trading Co. (35%). Id. at ¶3.

The record shows that Weihai Haima Carpet Co. Ltd. ("Weihai Haima") emerged when Weihai No. 1 Carpet Factory was reorganized in 2003. **[D.E. 54]**. Dahua argues that because the reorganization of Weihai No. 1 Carpet Factory was done under Chinese law, and because Weihai Haima & Dahua are separate Chinese entities, any alter-ego determination must be made under Chinese law. **[D.E. 89]**. Along these same lines, Dahua argues that the question of whether to pierce the corporate veil of a foreign corporation must likewise be determined by the law of the incorporating state. See, e.g., Fish & Neave v. Perovetz, 1993 WL 7572 at *4 (S.D.N.Y.).

In this connection, Dahua submits the affidavit of its expert, Jinghai Sun.[2] **[D.E. 101-1]**. In his

---

[2] Sun is a Chinese attorney licensed to practice law in the People's Republic of China. **[D.E. 101-1]**.

3

affidavit, Mr. Sun states that Chinese law recognizes the concept of veil piercing, but will only engage it in exceptional circumstances. See Sun Aff. at ¶ 10 **[D.E. 101-1]**. In order words, the corporate veil of a subsidiary entity will only be pierced if the Plaintiff can establish that such entity was organized and employed as a device to engage in any kind of fraud on creditors and as a result causes damages to creditors. Id. If the corporate veil is pierced, and the subsidiary corporation is determined to be the alter-ego of the corporate parent, the corporate shareholder will be held responsible for the debts of the corporate subsidiary. Id. at ¶ 11. Here, Dahua claims that Plaintiff is trying to engage in reverse corporate veil piercing by holding Dahua, a subsidiary, responsible for the debts of its corporate parent, Weihai Haima. According to Dahua's expert, Chinese law does not recognize reverse veil piercing. Id. at ¶ 12.

On the other hand, Milliken argues that although Dahua was properly set up as a Chinese company under Chinese law, it was improperly used by Weihai in order to circumvent Plaintiff's judgment. Milliken also argues that Dahua has failed to met its burden of sufficiently proving Chinese law in a way that the court can apply same to the facts of the case. In this connection, Milliken argues that the Court should not apply Chinese law where it does not conflict with the laws of the forum state. Milliken further argues that the "internal affairs doctrine" cited by Dahua does not apply, because the creditors rights at issue are determined by Florida law, and because Florida has the most significant relationship to the case. Lastly, Milliken argues that the application of Chinese law would violate public policy. In other words, Milliken urges that even if Florida's choice of law rules were to dictate the application of Chinese law, the court should decline to apply same if it determines that Chinese law is contrary or repugnant to the public policy in Florida. According to Milliken, enforcement and collection of debts by U.S. litigants against Chinese companies is extremely difficult – rendering a large percentage unenforceable.

## Analysis

This is an action to enforce a Nevada judgment. The parties concede that the basis for jurisdiction is diversity. A court sitting in diversity will apply the choice of law rules of the forum state in which it sits. Grupo Televisa, S.A. v. Telemundo Comm. Group, 485 F. 3d 1233, 1240 (11th Cir. 2007). A federal court sitting in diversity must first characterize the legal issues and determine in which category of law they are based, i.e., torts, contract, etc.. Klaxton Co. v. Stentor Elect. Mfg. Co., 313 U.S. 487 (1941). Once it has characterized the legal issue, the court next determines the choice of law rule that the forum state applies to that particular issue. Mukamel v. Bakes, et al., 383 B.R. 798 (S.D.Fla. 2007)(citing Telemundo, 485 F. 3d at 1240).

## Restatement (Second) Conflict of Laws

When determining claims involving corporations both the Eleventh Circuit and the Florida state courts have further analyzed choice of law questions by looking to the Restatement (Second) of Conflict of Laws for guidance. See Int'l. Ins. Co. v. Johns, 847 F. 2d 1447, 1458 (11th Cir. 1989). The relevant portion of the Restatement states,

> **§ 302. Other Issues with Respect to Powers and Liabilities of a Corporation**
>
> (1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the **most significant relationship** to the occurrence and the parties under the principles stated in §6.
>
> (2) The local law of the state of incorporation will be applied to determine such issues, **except** in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Rest. (Second) Conflict of Laws § 302 (1971). (emphasis added).

Here, Milliken argues that § 302's exception should apply favoring Florida law. In Florida, conflict-of-law questions are resolved according to the "most significant relationship" test, as outlined

in the Restatement cited *supra*.  See Bishop v. Florida Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980); see also In re Friedlander Capital Mgmt. Corp., 411 B.R. 434, 442 (Bankr. S.D. Fla. 2009) (court weighed the relationship of the parties and the occurrence to the forum state before applying law of the incorporating state).

In this connection, Milliken argues that Florida has the most significant relation to the parties because, *inter alia*, it is the situs of the funds held by Carnival[3] for payment to Dahua, said funds represent payment for the previously seized carpet that was sold by Dahua to Carnival and/or Princess in the State of Florida, Dahua has chosen to engage in business in Florida, and Florida is the state of domestication of Milliken's judgment.  The undersigned agrees.

## Application of the Laws of State of Incorporation

The general principle that the state of incorporation normally determines issues regarding a corporation's "internal affairs" achieves the need for certainty and predictability as to the justified expectations of parties with interests in the corporation.  See First National City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611 (1983)("Banco")(citing Rest. (Second) Conflict of Laws § 302; Cf., Cort v Ash, 422 U.S. 66 (1975)).  However, different principles apply where the rights of third parties outside the corporation are at issue.  Itel Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd., et al, 1988 WL 75262 (S.D.N.Y.)(citing Banco 462 U.S. at 611 (emphasis added).  In other words, the place of incorporation is but one contact, and it falls far short of being the most relevant one.  See Itel, 1988 WL 75262 at * 4.  Significantly more germane to the inquiry are the points of contact and transactions by which defendants allegedly disregarded the corporate form to the detriment of third parties.  Id.

---

[3]The transaction that led Plaintiff to initially seize the subject rolls of carpet arose from Dahua's dealings with Carnival and Princess, both of whom are Florida corporations with Florida registered agents.

Here, the Court is not persuaded that the kind of "internal affairs" at issue here can be properly determined solely on the basis of Dahua's state of incorporation. As noted by Milliken, the term "internal affairs" relate to the *inter se* of the corporation, its shareholders, officers, directors, etc. Dahua's arguments would be more convincing if the matter at hand related directly to the rights of its corporate officers and directors.

In this connection, the Banco case is somewhat instructive in the context of the alter-ego theory and related matters. Banco, 462 U.S. at 611 (1983). By way of background, in 1960, the Cuban Government established el Banco Para el Comercio Exterior de Cuba ("Banco") to serve as an official autonomous credit institution for foreign trade with full juridical capacity of its own. Id. At some point, Banco sought to collect on a letter of credit previously issued by First National City Bank ("First National"). Said letter related to a contract for delivery of Cuban sugar to a buyer in the United States. Shortly thereafter, however, all of First National's assets were nationalized by the Cuban Government. Banco sued on the letter of credit and First National counterclaimed, asserting its right to set-off the value of previously seized assets. Id.

Before First National filed its counterclaim, Banco dissolved and split its capital between Banco Nacional, Cuba's central bank, and certain foreign trade enterprises of the Cuban Ministry of Foreign Trade. Id. The district court rejected Banco's contention that its separate juridical status shielded it from liability from the acts of the Cuban Government, and granted the set-off in favor of First National. Id. The Court of Appeals reversed, holding that Banco was not the alter-ego of the Cuban government for purposes of the claim at hand. The Supreme Court subsequently reversed and remanded, finding, among other things, that Cuba could not escape liability by merely re-transferring assets to separate juridical entities. Id. at 633. In so doing, Justice O'Connor cautioned,

> To give conclusive effect to the law of the chartering state in determining whether the separate juridical status of its instrumentality should be respected would permit the state to violate with

7

impunity the rights of *third parties* . . . . while effectively insulating itself from liability in foreign courts. We decline to permit such a result.

Banco, 462 U.S. at 621. (emphasis added).

This Court agrees. Here, the relief sought by Milliken (a third-party) is external to Dahua as a corporate entity. Simply put, the matter before the Court is a garnishment proceeding wherein the rights of Milliken – an American corporation/ judgment creditor seeking to enforce an American judgment – shall be determined. The collection of the judgment at issue has absolutely no significant relationship to Dahua's state of incorporation. Accordingly, the undersigned finds that the exception provided in §302 (2) and the case law interpreting same warrants the application of Florida law and **RESPECTFULLY RECOMMENDS** that the district court apply same.

Consistent with the above and foregoing, it is **RESPECTFULLY RECOMMENDED** that Dahua's Motion **[D.E. 89]** be **DENIED**.

Pursuant to local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation to serve and file written objections, if any, with the Honorable James L. King, United States District Judge. Failure to file timely objections shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F. 2d 745 (11th Circ. 1998); cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F 2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida this 1st day of March 2010.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. James L. King, Senior District Court Judge
Counsel of Record